# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEIGTECH EAST BAY LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>LUTRON ELECTRONICS CO., INC.,<br>    Defendant, | Civil Action No. 1:19-cv-4693-CM<br><br>**JURY TRIAL DEMANDED** |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF GEIGTECH EASTBAY LLC'S MOTION TO
# DISMISS AND STRIKE DEFENDANT LUTRON'S INEQUITABLE CONDUCT
# <u>COUNTERCLAIM AND AFFIRMATIVE DEFENSE</u>

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 3

    A. Lutron Admits its Current Theory of Infected Unenforceability Based on Inequitable Conduct is Legally Meritless and Attempts to Convert it to an Affirmative Defense of Unclean Hands ................................................................. 3

    B. Lutron's New Theory of Inequitable Conduct Related to the Prosecution of the '717 Patent is Not in its Counterclaims and is Also Legally Deficient .................. 7

III. CONCLUSION .................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................... 8

*Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*,
  910 F.2d 804 (Fed. Cir. 1990) ........................................................................................... 5

*Cordis Corp. v. Boston Scientific Corp.*,
  641 F. Supp.2d 353 (D. Del. 2009), aff'd on other grounds, 658 F.3d 1347
  (Fed. Cir. 2011) .................................................................................................................. 6

*Cutsforth, Inc. v. LEMM Liquidating Co., LLC*,
  No. 12-CV-1200, 2013 WL 2455979 (D. Minn. June 6, 2013) ........................................ 9

*F5 Capital v. Pappas*,
  856 F.3d 61 (2d Cir. 2017) ................................................................................................ 8

*Gilead Sciences, Inc. v. Merck & Co.*
  888 F.3d 1231 (Fed. Cir 2018) ...................................................................................... 4, 5

*Grantley Patent Holdings, Ltd. v. Clear Channel Communications, Inc.*,
  540 F. Supp.2d 724 (E.D. Tex. 2008) ........................................................................... 5, 6

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  No. CV 18-452-WCB, 2019 WL 2121395 (D. Del. May 15, 2019) ................................ 5

*Keystone Driller Co. v. General Excavator Co.*,
  290 U.S. 240 (1933) ........................................................................................................... 5

*Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*,
  606 F.3d 1353 (Fed. Cir. 2010) .................................................................................. 8, 10

*Medisim Ltd. v. BestMed LLC*,
  910 F. Supp.2d 591 (S.D.N.Y. 2012) ............................................................................... 6

*Nilssen v. Osram Sylvania, Inc.*,
  504 F.3d 1223 (Fed. Cir. 2007) ........................................................................................ 8

*Not Dead Yet Mfg. Inc. v. Pride Sols., LLC*,
  265 F. Supp. 3d 811 (N.D. Ill. 2017) ............................................................................... 8

*Parkervision, Inc. v. Qualcomm, Inc.*,
  924 F. Supp 2d 1314 (M.D. Fla. 2013) ............................................................................ 7

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) (*en banc*) ................................................................................10

*Zam & Zam Super Market, LLC v. Ignite Payments, LLC*,
  No. 17-3571-cv, 2018 WL 2460154 (2d Cir. June 1, 2018) .......................................................8

**Statutes**

35 U.S.C. § 112..................................................................................................................................8

**I.     INTRODUCTION**

Lutron's Opposition (Dkt. 29, "Opposition" or "Opp.") concedes that it has no claim for inequitable conduct. It does so by: (1) switching its current counterclaim for inequitable conduct based on infectious unenforceability into an affirmative defense for unclean hands; and (2) asserting brand new theories of inequitable conduct that are not pleaded in its counterclaims. These drastic changes verify that Lutron's counterclaim for inequitable conduct, even assuming all facts pleaded by Lutron in its counterclaim are true, should be dismissed. Tellingly, Lutron requests leave to amend to fix its defective pleading. The Court should not allow this. Lutron's new asserted theories of inequitable conduct suffer from the same deficiencies as its original position. Neither can withstand the strict requirements for asserting inequitable conduct and must be dismissed and stricken as a matter of law.

The single basis for inequitable conduct in Lutron's current Counterclaims refers to the alleged concealment of alleged prior art (the HeAVi 2010 and Somfy references) from the PTO during the prosecution of the '821 patent. As shown, Lutron's allegation that J Geiger committed any inequitable conduct during the prosecution of the '821 patent is not based in law or fact. The HeAVi 2010 and Somfy references are not material, are cumulative of prior art of record of the '821 patent, and there was never an intentional effort to conceal these materials from the PTO. Nevertheless, J Geiger did disclose them, the PTO considered them, and the '717 patent was issued. These facts. and the relevant case law, support the removal of this issue from the litigation.

Lutron concedes that these references were indeed disclosed to the PTO during the prosecution of the patent-in-suit, the '717 patent. This fact eliminates any basis for inequitable conduct because it requires "but for" materiality, so Lutron has now shifted its claim for inequitable conduct into the affirmative defense of unclean hands. Lutron's admission that it no longer seeks

to assert a claim for inequitable conduct based on infectious unenforceability requires that J Geiger's motion be granted. But even Lutron's unclean hands argument is legally and factually deficient. Lutron cites a number of unclean hands cases that simply hold that a related patent can be unenforceable when it is "immediately and necessarily" related to the original misconduct. None of those cases concern an instance where the alleged misconduct is a failure to disclose prior art, which is subsequently disclosed during the prosecution of the later related patent. Indeed, Lutron can point to no authority to support its theory of infected unenforceability that fits with the admitted facts of this case. Conversely, J Geiger cites numerous cases holding there can be no inequitable conduct for failure to disclose prior art when that alleged prior art is submitted to the PTO for consideration, as happened in this case. Accordingly, as Lutron acknowledges, its current theory of inequitable conduct based on misconduct during the prosecution of the '821 patent is not feasible as a matter of law and must be dismissed.

Realizing its inequitable conduct counterclaim based on infectious unenforceability has no merit, Lutron's Opposition seeks to assert a new set of allegations of inequitable conduct for failing to disclose the existence of the '821 patent litigation (No. 1:18-cv-05290, "the '821 Litigation") during the prosecution of the '717 patent. Lutron contends that J Geiger breached its duty of candor and good faith by not disclosing Lutron's opposition to J Geiger's motion for preliminary injunction ('821 Litigation, Dkt. 44, "PI Opposition") and the Court's order regarding the preliminary injunction ('821 Litigation, Dkt. 57, "PI Order"). These new allegations do not appear in Lutron's Counterclaims and Lutron should not be allowed to amend to include them. The new allegations do not state a basis for relief because neither the existence of the '821 Litigation, the PI Opposition, or Order would not be material to the issuance of the '717 patent. The '821 litigation itself ended after four months. Lutron never provided an answer in that litigation and thus never

made a claim or defense of invalidity or inequitable conduct. Lutron's PI Opposition simply referenced the Somfy references and stated they were similar to the invention in the '821 patent. The PI Opposition did not include an invalidity claim chart or provide any detail element by element analysis of invalidity. To the extent the PI Opposition did include any material information, it was cumulative to the Somfy references themselves, which J Geiger disclosed. For this reason, Lutron should not be permitted to amend its Counterclaims to add these allegations and Lutron's counterclaim for inequitable conduct should be dismissed and stricken.

## II.    ARGUMENT

### A.    Lutron Admits its Current Theory of Infected Unenforceability Based on Inequitable Conduct is Legally Meritless and Attempts to Convert it to an Affirmative Defense of Unclean Hands

Lutron's sole theory of inequitable conduct alleges that J Geiger concealed the HeAVi 2010 and Somfy references from the PTO during the prosecution of the '821 patent and this infected the related '717 patent rendering it unenforceable. *See* Dkt 23, "Counterclaims" at ¶¶ 40, 57, 63. However, Lutron's lone theory of inequitable conduct is fatally flawed because J Geiger did indeed disclose these references during the prosecution of the '717 patent, the examiner considered them, and still issued the '717 patent. To avoid dismissal, Lutron attempts to covert its counterclaim and affirmative defense of inequitable conduct into an affirmative defense of unclean hands. See Opp. at 6. "The infectious-unenforceability defense based on inequitable conduct is a form of the 'unclean hands' doctrine." Opp. at 6. While inequitable conduct and unclean hands both arise from concepts of equity, they are distinct legal claims/defenses and have different legal requirements. *See Gilead Sciences, Inc. v. Merck & Co.* 888 F.3d 1231 (Fed. Cir 2018) (distinguishing unclean hands from inequitable conduct) (citing *Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276 (Fed. Cir. 2011) (*en banc*). Based on its mangling of different

legal doctrines, Lutron incorrectly asserts that there can be no cure for an alleged failure to disclose prior art even when the PTO examines the prior art at issue. Lutron's argument is nonsensical, unreasonable, and contrary to the controlling authority.

The cases cited by Lutron in support of its theory of infectious unenforceability simply hold that a later related patent can be infected by misconduct that occurred during the prosecution of an earlier parent patent. See Opp. at 7-11. In order for the infection to occur the prior misconduct must be "immediately and necessarily related" to the issuance of the later patent. *Id*. The cases cited by Lutron are not analogous to the present facts. First, the cases cited by Lutron involve the equitable defense of uncleans hands and not the claim of inequitable conduct, which is what J Geiger's motion seeks to dismiss. Second, none of the cases involve an allegation of misconduct for failure to disclose prior art during the prosecution of a parent application that was later disclosed during the prosecution of a related patent.

Lutron alleges that because the '717 patent is a continuation of the '821 patent, the '717 patent claims have "an immediate and necessary relation" to the alleged concealment of the HeAVi 2010 and Somfy references from the PTO during the prosecution of the '821 patent had an immediate and necessary. Counterclaims at ¶ 11, Opp. at 13. In other words, but for the concealment of this alleged prior art, the '821 and '717 patents would not have been issued by the PTO. But it is implausible on its face to assert that the concealment of alleged prior art during the prosecution of the '821 patent was "immediately and necessarily related" to the issuance of the '717 patent when that prior art *was disclosed* and considered by the PTO and the '717 patent was issued.

None of the authority cited by Lutron addresses a set of facts where the alleged misconduct was remedied during the later patent's prosecution. *See IOENGINE, LLC v. PayPal Holdings, Inc.*,

No. CV 18-452-WCB, 2019 WL 2121395, at *4 (D. Del. May 15, 2019) (inequitable conduct based on failure to disclose alleged prior art during prosecution of parent patent that was not subsequently disclosed during prosecution of later patents); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 243-244 (1933) (allegation of unclean hands based on payment of witness to suppress evidence regarding prior use of parent invention that was not disclosed during prosecution of later patents); *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 807-808 (Fed. Cir. 1990) (inequitable conduct based on failure to disclose best mode of practicing patent and disclosure of fictitious inoperable mode during prosecution of parent patent that was not disclosed during prosecution of later patents); *Gilead*, 888 F.3d at 1240 (allegation of unclean hands based upon patent prosecutor obtaining improper information on accused product and providing false testimony about his knowledge that was not disclosed during prosecution of later patents).

Conversely, the authority cited by J Geiger is more analogous to the facts of this case. First, the authority cited by J Geiger actually concerns claims of inequitable conduct, not unclean hands. These cases hold that there can be no claim of inequitable conduct for failure to disclose prior art when the prior art is subsequently disclosed during the prosecution of a later patent. In *Grantley Patent Holdings, Ltd. v. Clear Channel Communications, Inc.*, 540 F. Supp.2d 724, 733-734 (E.D. Tex. 2008), the defendant asserted the same infected unenforceability claim as Lutron based upon the failure to disclose alleged prior art to the PTO during the prosecution of a parent patent. *Id*. As is the case here, the alleged prior art was explicitly included in the specification of the later related patent, a continuation-in-part of the parent patent.  *Id*. The court held that the disclosure of the prior art vitiated defendant's argument for inequitable conduct:

> It is difficult to imagine how any inequitable conduct with respect to the '047 patent "infected" the four later patents when those patents explicitly incorporated the publication by reference into their specifications. Any potential defect was cured by this inclusion.

*Id*. at 734. Similarly, in *Cordis Corp. v. Boston Scientific Corp*., 641 F. Supp.2d 353, 354-355 (D. Del. 2009), aff'd on other grounds, 658 F.3d 1347 (Fed. Cir. 2011) a defendant argued that the failure to disclose prior art during the prosecution of a parent patent constituted inequitable conduct and tainted the enforceability of a later related patent. However, as happened here, the alleged prior art was disclosed to the PTO during the prosecution of the patent asserted in the case. *Id*. at 356-357. The examiner initialed the disclosure of that prior art to show he had considered it and then issued the patent, which is also what happened in this case. *Id*. at 357. The court found the defendant could not show how the prosecution of the parent patent affected the later patent in ways that were "immediate" and "necessary" where the prior art was identified as prior art in connection with the related patent. *Id*. at 359. Finally, in *Medisim Ltd. v. BestMed LLC*, 910 F. Supp.2d 591, 626-627 (S.D.N.Y. 2012), the defendant asserted inequitable conduct based on the failure to disclose alleged prior art. However, the alleged prior art was subsequently disclosed in a divisional patent application, the examiner considered it, and the patents were issued. *Id*. at 627. The Court found that even if the plaintiff had believed the alleged prior art was material and intentionally sought to conceal it and deceive the PTO, "there can be no 'but for' materiality when the patent issued over the disclosed reference." *Id*.

Lutron attempts to distinguish these cases by stating they are all trial or summary judgment opinions and should be given no weight for a motion to dismiss. These cases are more analogous to the facts of this case than anything cited by Lutron and confirm that there is no plausible basis for infected unenforceability based up a failure to disclose prior art when the prior art is

subsequently disclosed to the PTO. Moreover, courts have granted motions to dismiss claims of inequitable conduct under Rule 12(b)(6) in such cases where there is no plausible basis for relief. *See Parkervision, Inc. v. Qualcomm, Inc.*, 924 F. Supp 2d 1314, 1318-19 (M.D. Fla. 2013) (granting motion to dismiss inequitable conduct allegations as a matter of law). Furthermore, Lutron concedes the fact that the HeAVi 2010 and Somfy references were disclosed to the PTO, they were considered by the patent examiner, and the '717 patent was issued. Additional discovery will not change these facts. Accordingly, the dismissal/striking of Lutron's inequitable conduct claim and affirmative defense is appropriate as a matter of law under Rule 12(b)(6) and 12(f).

## B. Lutron's New Theory of Inequitable Conduct Related to the Prosecution of the '717 Patent is Not in its Counterclaims and is Also Legally Deficient

Realizing that its theory of infectious unenforceability is legally flawed and meritless, Lutron attempts to offer new theories of inequitable conduct that are not found in its Counterclaims. For the first time in its Opposition Brief, Lutron alleges that J Geiger committed inequitable conduct by not disclosing the earlier litigation regarding the '821 patent or Lutron's Opposition to J Geiger's preliminary judgment motion and the Court's subsequent order. *See* Opposition Sec. C. at 16-22. These allegations are not plead in Lutron's Counterclaims. *See* Opp. at 3-6. Paragraph 8 of the "Factual Allegations of the Counterclaims" section alleges that J Geiger failed to disclose "the existence of Case 1, this Court's September Order, or any of the preliminary-injunction briefing to the Examiner during prosecution of the '717 patent-in-suit," but provides no citation to Lutron's Counterclaims. Opp. at 5.

The Court should not allow Lutron the opportunity to further amend its complaint to include them. It is well-settled in this Circuit that courts may deny leave to amend as futile where a plaintiff gives no indication how it would survive a motion to dismiss. *F5 Capital v. Pappas*,

856 F.3d 61, 89 (2d Cir. 2017) (affirming denial of leave to amend on the ground that plaintiff failed to identify how it would cure deficiencies in the amended complaint); *Zam & Zam Super Market, LLC v. Ignite Payments, LLC*, No. 17-3571-cv, 2018 WL 2460154, at *4 (2d Cir. June 1, 2018) (same).

Like its current allegations, Lutron's new allegations fail to plead "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Each of the cases Lutron relies as authority to support its new allegations is distinguishable from the facts alleged in Lutron's Opposition. In each case, disclosure to the PTO was required because there was ongoing litigation or past litigation that provided clear articulations of theories of invalidity or unenforceability, including asserted defenses of invalidity or inequitable conduct, as well as invalidity contentions and invalidity claim charts. *See Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1362 (Fed. Cir. 2010) (parent patents of the patent-in-suit were involved in at least a dozen lawsuits that had specific allegations of invalidity); *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1228 (Fed. Cir. 2007) (plaintiff's failure to disclose ongoing litigation involving related patents involving claims of invalidity for anticipation, obviousness, and failure to observe the requirements of 35 U.S.C. § 112); *Not Dead Yet Mfg. Inc. v. Pride Sols., LLC*, 265 F. Supp. 3d 811 (N.D. Ill. 2017) (plaintiff failed to provide notice of litigation of ongoing litigation where the defendant served an answer asserting claims of invalidity and inequitable conduct and provided invalidity contentions); *Cutsforth, Inc. v. LEMM Liquidating Co., LLC*, No. 12-CV-1200, 2013 WL 2455979, at *1 (D. Minn. June 6, 2013) (plaintiff failed to disclose invalidity claim chart provided by defendant that specifically articulated various basis for invalidity).

Here, in contrast, the patent litigation involving the '821 patent only lasted a few months. Lutron never answered its complaint or provided any articulated argument regarding invalidity. Thus, there was never anything to disclose to the PTO from the '821 Litigation that would have been material to the claims of the '717 patent.

Lutron alleges that its opposition to J Geiger's motion for preliminary injunction was material and should have been disclosed to the PTO. It is true that Lutron's PI Opposition spent four pages briefly asserting invalidity and inequitable conduct defenses based on the alleged Somfy references. *See* PI Opposition, Sec. II.B. Most of those four pages were taken up by pictures from the Somfy references and asserted they were "strikingly close to GeigTech's description of its own alleged jamb-bracket invention." *Id.* at 22. Lutron never included an invalidity claim chart or provided an element by element analysis to show how the Somfy references were invalidating.

Lutron also contends that the Court's order on the preliminary injunction should have been disclosed to the PTO because it concluded that Lutron "has raised substantial unrebutted questions about both the validity and enforceability of Plaintiff's ['821] patent." PI Order at 1-2. This, however, is inaccurate. J Geiger provided a detailed rebuttal of Lutron's allegations of invalidity and inequitable conduct in its reply brief ('821 Litigation, Dkt. 48, "PI Reply"). Indeed, J Geiger spent the first half of its reply on the allegations concerning Somfy (PI Reply at 2-5) and attached a ten-page declaration from James Geiger that provided a detailed rebuttal to the assertions that the Somfy motors and brackets were invalidating prior art or material information that needed to be disclosed to the PTO ('821 Litigation, Dkt. 48-1 at ¶¶ 14-22). The Geiger Declaration and the PI Reply identified at least three key features that were missing from the Somfy references that would have prevented them from being invalidating prior art. *See id.*

Despite denying the materiality of the Somfy references, J Geiger provided the complete Somfy references, ninety-one pages of documentation in total, to the PTO for consideration. The examiner reviewed these materials, considered them, and agreed with J Geiger that they were not material by issuing the '717 patent.

Simply put, there is no reason to allow Lutron to amend its Counterclaims to allege its new theory of inequitable conduct because the new allegations cannot withstand the *Therasense* but-for materiality test, which examines "whether the PTO would have allowed the [patent] claim if it had been aware of the undisclosed reference." *See Therasense*, 649 F.3d at 1291. There was nothing about the '821 litigation itself to disclose to the PTO. The sparse assertion of invalidity and inequitable conduct based on the Somfy references in the PI Motion was cumulative of the Somfy references themselves, which J Geiger disclosed to the PTO. *See Leviton*, 606 F.3d 1359 ("a withheld otherwise material reference is not material if it is merely cumulative to, or less relevant than, information already considered by the examiner.") (citation omitted).

## III.   CONCLUSION

For the foregoing reasons and those set forth in J Geiger's moving brief, Lutron's counterclaim and affirmative defense of inequitable conduct should be dismissed and stricken.

Dated: September 18, 2019            Respectfully submitted,

*/s/ Gary R. Sorden*_____
Jed M. Weiss, Bar ID JMW-5293
**COLE SCHOTZ, P.C.**
1325 Avenue of the Americas, 19th Floor
New York, New York 10025

Gary R. Sorden (admitted via pro hac vice)
Texas Bar No. 24066124
gsorden@coleschotz.com
Brian L. King (admitted via pro hac vice)
Texas Bar No. 24055776
bking@coleschotz.com
**COLE SCHOTZ, P.C.**
901 Main Street
Suite 4120
Dallas, Texas 75202
Telephone: 469-557-9390
Fax: 469-533-1587

**ATTORNEYS FOR PLAINTIFF
GEIGTECH EAST BAY LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on September 18, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Gary R. Sorden*
Gary R. Sorden